IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KENNETH DEWAYNE WILLIAMS,          *
                                   *
        Petitioner,                *
                                   *
vs.                                *          No. 5:07cv00234  SWW
                                   *
                                   *
                                   *
LARRY NORRIS, Director,            *
Arkansas Department of Correction, *
                                   *
        Respondent.                *

**Memorandum Opinion and Order**

Kenneth Dewayne Williams, an inmate in custody of the Arkansas Department of Correction, is under sentence of death for the 1999 murder of Cecil Boren. Williams seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), on grounds that both his conviction and sentence are in violation of various provisions of the United States Constitution. Having carefully reviewed the record, the Court concludes each of the grounds advanced by Williams in support of his petition for writ of habeas corpus is without merit.

**Background**

Williams arrived at the Cummins Unit of the Arkansas Department of Correction ("ADC") on September 15, 1999. He was sentenced earlier that day to life without parole on convictions of capital murder, attempted capital murder, kidnaping, aggravated robbery, theft, and arson in Jefferson County, Arkansas. These convictions arose from events that occurred on December 13, 1998.

On October 3, 1999, eighteen days after his arrival the ADC, the Cummins Unit warden received notice that Williams was missing.  Williams had escaped from the prison by hiding in a hog-slop tank that was hauled from the prison.  He jumped from the tank, hid in a ditch and ultimately walked to Cecil Boren's home where he robbed and killed him.  The day after the escape, Williams fled from police in Missouri in a high speed auto chase that resulted in Williams's vehicle colliding with another vehicle, killing the other driver, Michael Greenwood.  Williams was convicted of capital felony murder and theft of property by a jury in Lincoln County, Arkansas on August 30, 2000.  He was sentenced to death on the capital murder conviction and to forty years on the theft conviction under the habitual-offender enhancement provision.

The Arkansas Supreme Court affirmed Williams's convictions and sentences on direct appeal.  *Williams v. State,* 67 S.W.3d 548 (Ark. 2002) (hereinafter *Williams I*).  Williams petitioned for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure.  The circuit court conducted a hearing and entered an order denying relief.  The Arkansas Supreme Court affirmed the denial of post-conviction relief in *Williams v. State,* 251 S.W.3d 290 (Ark. 2007) (hereinafter *Williams II*).

On September 10, 2007, Williams filed his petition for habeas corpus relief in this Court, asserting the following grounds for relief: (1) his Eighth Amendment rights were violated by the refusal to provide funds for or permit the presentation of mitigation evidence that the ADC bore some responsibility for the events causing Boren's death; (2) the trial court improperly permitted certain victim impact evidence and, to the extent the argument was defaulted by trial counsel, counsel was ineffective; (3) trial counsel was ineffective for failing to properly object to a biased

2

juror; (4) trial counsel was ineffective for failing to properly object to the jury's failure to

consider mitigating evidence; (5) trial counsel was ineffective for failing to introduce the

supporting documentation of mitigation evidence; (6) his due process rights were violated by

being required to stand trial shackled, in prison attire, and with numerous uniformed guards

around him, and to the extent trial counsel defaulted the argument, he was ineffective; and (7) his

Sixth Amendment  rights were violated by the denial of funds for an investigator to probe issues

of juror bias and misconduct.

**Standard of Review**

**1.      Procedural Default**

In order to preserve a claim for relief, a habeas petitioner must present that claim to the

state court and allow that court an opportunity to address the claim.  *Coleman v. Thompson,* 501

U.S. 722, 731-32 (1991).  Where a petitioner fails to follow applicable state procedural rules, any

claims not properly raised before the state court are procedurally defaulted.  *Moore-El v.*

*Luebbers,* 446 F.3d 890, 896 (8th Cir. 2006).  In this respect, the doctrine of procedural default

asks "not only whether a prisoner has exhausted his state remedies, but also whether he has

*properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state

courts."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999)(emphasis in original).  "We have held

repeatedly that a claim has not been fairly presented to the state courts unless the same factual

grounds and legal theories asserted in the prisoner's federal habeas petition have been properly

raised in the prisoner's state court proceedings."  *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir.),

*cert. denied*, 516 U.S. 1015 (1995).  "We have also held that a claim is considered exhausted

when the petitioner has afforded the highest state court a fair opportunity to rule on the factual

and theoretical substance of his claim." *Id*. (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)).  "In order to fairly present a federal claim to the state courts, the petitioner must have referred to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quoting *Myre v. State of Iowa*, 53 F.3d 199, 200-01 (8th Cir. 1995)).  A claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction proceedings.  *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001) (citation omitted).

Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338-39).  "Cause" for the procedural default exists, for example, when counsel has been constitutionally ineffective or when an objective, external impediment prevented counsel from complying with the state's procedural rule.  *Noel v. Norris*, 194 F.Supp.2d 893, 904 (E.D.Ark. 2002) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions ... [such that he] was denied fundamental fairness at trial." *Id*. (quoting *Murray*, 477 U.S. at 494).

**2.**    **Antiterrorism and Effective Death Penalty Act**

Under the AEDPA amendments to 28 U.S.C. § 2254, a state prisoner may obtain federal habeas relief with respect to a claim that has been adjudicated on the merits in state court only when the state decision was (1) contrary to or involved an unreasonable application of clearly established Supreme Court precedent or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

A state court's decision is "'contrary to' clearly established federal law if the state court has applied a rule that directly contradicts Supreme Court precedent or has reached a result opposite to a result reached by the Supreme Court on 'materially indistinguishable' facts." *Kinder v. Bowersox,* 272 F.3d 532, 537-38 (8th Cir. 2001). A state court's decision will be viewed as an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Thus, a state court's application of federal law might be erroneous, yet not objectively unreasonable. *Kinder*, 272 F.3d at 538. "Finally, facts found by the state court are presumed to be correct unless the applicant can rebut the presumption by clear and convincing evidence." *Rouper v. Rosan,* 436 F.3d 951, 956 (8th Cir. 2006)(citing § 2254(e)(1)).

5

## Discussion

Having set forth the background of this petition and the standard of review to be applied, the Court now turns to a discussion of Williams's asserted grounds for habeas relief.[1]

### 1.      Expert in Corrections

Williams asked the trial court to provide him funds to hire an expert in corrections, asserting that the retention of such expert "is essential to be able to effectively present mitigation of his defense." Trial Record, Vol. 2 at 451.  Williams anticipated that the expert would testify that considering Williams's history, it was predictable that he would escape, and that the ADC bore some responsibility for Boren's death because it failed to take adequate security precautions. In his pre-trial  motion, Williams referenced the Fifth, Sixth, Eighth, and Fourteenth Amendments, and cited *Ake v. Oklahoma*, 470 U.S. 68 (1985), for the proposition that the due process clause of the Fourteenth Amendment, upon proper showing, provides capital defendants with the right to state funding for the retention of experts for use in both the penalty and guilt phases.  Trial Record, Vol. 2 at 451-55.  The trial court denied the motion finding that the proffered testimony was not "relevant mitigating evidence."  *Id.* at 505.

On direct appeal, Williams argued the trial court erred because the corrections expert would have had relevant mitigating evidence and the Due Process Clause of the Fourteenth Amendment requires states to provide funds for the use of expert witnesses. R. 202.  The

---

[1]The Court addresses those grounds without holding an evidentiary hearing as § 2254(e)(2) provides that "a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on 'a factual predicate that could not have been previously discovered through the exercise of due diligence' and the facts would 'establish by clear and convincing evidence' the petitioner's actual innocence."  *Morris v. Dormire*, 217 F.3d 556, 559 (8th Cir.), *cert. denied*, 531 U.S. 984 (2000) (citing *Williams v. Taylor*, 529 U.S. 420, 433-37 (2000)).  *See also Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001), *cert. denied*, 536 U.S. 926 (2002).  Williams does not satisfy the statutory requirements with respect to any of his asserted grounds for habeas relief.

Arkansas Supreme Court held the proffered expert testimony had no tendency to diminish
Williams's responsibility and therefore was not mitigating evidence. *Williams I*, 67 S.W.3d at
563.

In addition to arguing the failure to provide funds was contrary to and an unreasonable
application of *Ake*, Williams contends in the petition before the Court that the state court's
decision violated the Eighth Amendment and was contrary to and an unreasonable application of
*Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma,* 455 U.S. 104 (1982); and *Skipper v.
South Carolina,* 476 U.S. 1 (1986).  Respondent argues Williams defaulted any claim based on
the Eighth Amendment because he relied on the Due Process Clause of the Fourteenth
Amendment and *Ake* at the trial level and on appeal.

The Court finds Williams's claim that his sentence was arbitrary and capricious because
he was denied his Eighth Amendment right to present relevant mitigating evidence was not fairly
presented to the state court and he has not demonstrated either cause for the default and actual
prejudice, or that the default will result in a fundamental miscarriage of justice.  *Moore-El*, 446
F.3d at 896 (citing *Sawyer v. Whitley,* 505 U.S. 333, 338-9 (1992)).  Even were the Court to
consider the Eighth Amendment claim on the merits, it would fail.

In *Lockett, Eddings,* and *Skipper,* the Supreme Court established that the Eighth
Amendment guarantees a capital defendant the right to introduce all relevant mitigating evidence
in the penalty phase.[2]  The Court noted that "the Eighth and Fourteenth Amendments require that
the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a*

---

[2]The foremost concern of the Eighth Amendment is that the death sentence not be imposed in an
arbitrary and capricious manner.  *Saffle v. Parks,* 494 U.S. 484, 506-07 (1990).

*mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604. Williams asserts that the proffered testimony of the expert in corrections falls directly within the broad parameters of Eighth Amendment law permitting the use of "any" mitigating evidence.

In denying Williams's claim, the Arkansas Supreme Court stated:

To be admissible, evidence of mitigating circumstances must be relevant to the issue of the defendant's punishment.

Where the offered evidence of mitigation has nothing to do with a criminal defendant's character, record, background, history, condition, or the circumstances of his crime, it is not relevant on the issue of punishment. Williams's argument is essentially that because the Department of Correction knew he was a violent man, it should have protected him against himself by assuring he did not escape and that somehow the alleged negligence of the Department of Correction diminished Williams's responsibility for the carnage he wreaked upon his escape.

Even the slightest evidence of a mitigating circumstance may be submitted to the jury. The proposed evidence, however, casts no light on Williams's culpability. It does not have any tendency to diminish Williams's responsibility. It is not a mitigating circumstance. It was inadmissible.

*Williams I*, 751 S.W.3d at 563 (citations omitted).

It is undisputed that courts permit a wide range of mitigation evidence during the sentencing phase at trial, and that the sentencer may not be prevented from considering any relevant mitigating evidence and may not refuse to consider the evidence. *See Lockett, supra; Eddings, supra;* and *Skipper, supra.* The Supreme Court further stated in *Lockett* that nothing in its opinion should be taken as "limit[ing] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or circumstances of his offense." 438 U.S. at 604 n.12.

The Arkansas Supreme Court found that Williams's proposed evidence was not mitigating evidence and was inadmissible.  *Williams I*, 67 S.W.3d at 563.  This was not contrary to or an unreasonable application of federal law.

Williams also argues that the Arkansas Supreme Court's decision is unreasonable because the expert funding should have been permitted based on *Ake v. Oklahoma*, 470 U.S. 68 (1985).  *Ake* establishes the right for psychiatric assistance when mental disease is asserted as a defense at trial: "[W]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id*. at 74.  A defendant must show the trial court a reasonable probability exists that both an expert would be of assistance to the defense and that denial of expert assistance would result in an unfair trial.  In *Little v. Armontrout*, 835 F.2d 1240 (8th Cir.1987) , the Eighth Circuit held that the right to expert assistance is not limited to psychiatric experts and that Little "demonstrated that an expert in hypnosis would have substantially aided his defense, and that denial of such expert would and did have a material impact on his trial."  *Id.* at 1244.  Here, the Arkansas Supreme Court held the evidence sought from the expert in corrections "casts no light on Williams's culpability" and did "not have any tendency to diminish Williams's responsibility." *Williams I*, 67 S.W.3d at 563.

Although Williams was unsuccessful in obtaining funds for the appointment of the corrections expert, his attorneys presented evidence that the ADC may be partly responsible for Boren's death.  During the sentencing phase, Williams's attorney questioned the Cummins Unit

warden about the ADC's negligence in Boren's death.  Counsel asked Warden Reed to read a

report he had written to Larry Norris, Director of the ADC, regarding Williams escape.

| | |
|---|---|
| Warden Reed: | "At this time, there is evidence that barracks officer and sally port gate officer did not perform their assigned task duties as stated in their post orders which allowed Inmate Williams to escape the unit undetected until the 6:30 p.m. count.  There may also be other staff identified as ASP investigation continues." |
| Williams's Attorney: | . . . You . . . determined that Department of Correction's negligence had caused or attributed to the defendant's escape from the Department of Correction.  Is that correct? |
| Warden Reed: | I determined that those two staff members [sic]  inaction contributed to that. |

Trial Record, Vol. 8 at 2105-06.

Next, Warden Reed was questioned about the ADC's alleged negligence for placing

Williams at a medium security level.

| | |
|---|---|
| Williams's Attorney: | And you knew he had gotten two sentences within the month in Pine Bluff, aggravated robbery, kidnaping, and capital felony murder? |
| Warden Reed: | That would have been in his file. |
| Williams's Attorney: | And still placed him where they did? |
| Warden Reed: | They made the decision to put him the barracks, yes, sir. |

*Id.* at 2106-07.

| | |
|---|---|
| Williams's Attorney: | And when he got into that slop tank, he apparently got into it undetected? |
| Warden Reed: | He did that. |
| Williams's Attorney: | Rode out undetected? |
| Warden Reed: | He did that. |
| Williams's Attorney: | Passed the sally port where there are at least two officers there and one in the tower? |
| Warden Reed: | He did that. Nobody checked him. |
| Williams's Attorney: | Nobody checked him. |
| Warden Reed: | He did that. |
| Williams's Attorney: | And that tank wasn't heated, was it? |

| | |
|---|---|
| Warden Reed: | No, it was not. |
| Williams's Attorney: | And it was heated - - it's supposed to be boiling, you know, no way anybody could survive, correct? |
| Warden Reed: | That's correct. |

*Id.* at 2107-08.  Williams's attorney continued questioning Reed about the ADC's alleged

negligence and responsibility for Boren's death.

| | |
|---|---|
| Williams's Attorney: | . . . Do you agree also that the Department of Correction has a duty to society to house somebody when they are sent there to keep them away from society? |
| Warden Reed: | That's our primary goal. |
| Williams's Attorney: | And you fail [sic] in that duty, didn't you? |
| Warden Reed: | In this case, Inmate Williams got out.  Yes, sir, we did. |

*Id.* at 2109-10.  Williams was able to get the message he wanted from the corrections expert to

the jury through Warden Reed.

In addition, Williams's psychologist testified that he believed the ADC was negligent.

Dr. Cunningham stated that "but for the negligence of security [of the Department of Correction],

Mr. Boren would still be alive."  *Id.* at 2185.  Lastly, the jury was provided with the following

two mitigating circumstances that specifically identified the ADC's possible negligence in

Boren's death:

The Department of Correction was negligent to the community in classifying
Kenneth D. Williams and allowing him to be placed in the Cummins Unit of the
ADC, medium security.

The Arkansas Department of Correction was negligent in allowing Kenneth D.
Williams to escape from the Cummins unit.

*Id.*, Vol. 2 at 500 (D).

After the instructions, Williams's attorney argued in his closing to the jury that the ADC

was responsible because "they didn't even bother to try [to keep him in the prison] . . . They put

him in there and then they created a system . . that was just full of holes."  Trial Record, Vol. 9 at

2239.  "The state's incompetent . . ."  *Id.* at 2240.  Williams's position was clear.  He pointed to

the ADC and attempted to persuade the jury to either place responsibility on the ADC or mitigate

his own responsibility in Boren's death.

The Court finds that the Arkansas Supreme Court's decision upholding the trial court's

denial of funds for an expert in corrections was neither contrary to nor an unreasonable

application of clearly established federal law as determined by the Supreme Court.

**2.      Victim Impact Testimony of Mrs. Knight**

During the sentencing phase, the State called a number of family members as victim

impact witnesses, including Boren's sister, Annette Boren Knight.  Ms. Knight explained that her

family had been broken and she felt helpless.

> Ms. Knight:  The meeting of my brothers and sisters when we get together it'll
> never be the same.  We ask ourselves what we can do in situations
> like this.  Well, we can't do anything as a family but hold together
> and pray together.  But you can do something. You are in a
> position to do that.  What would you do if it was your brother or
> your sister or your baby that someone stole away from you.  I can't
> do anything, but you can.
> No words can express how we feel.  Silence, the silence of never
> hearing Peewee's voice again haunts me and it will continue to
> haunt me.  We miss him.  We want him back, but we can't.

Trial Record, Vol. 8 at 2076.

> Williams's Attorney:  . . . Can we approach?
> (Counsel approached the bench).
> Williams's Attorney:  Once again, Judge, it's totally improper for her in victim impact to
> tell the jury what she wants them to do which is inferring to kill
> him.  It's improper.  Telling the jury that they are in a position to
> do something about this and she's not, that's improper.  That is not
> the purpose of victim witness, your Honor.  You just give me a
> continuing objection I'll sit down and shut up.
> The Court:          I think, you know, when you get to the point of ask them to put
> themselves in somebody else's place we're getting pretty close.

> I'm going to give you a few minutes, and I'm going to let you get those written statements out and peruse them for content.

*Id.* at 2077.  Williams's attorney then moved for a mistrial which the trial court denied.  *Id.* at 2078.

On direct appeal, Williams argued that the introduction of victim impact evidence violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He further argued it was a violation of state law to admit victim testimony stating what the penalty should be.  The Arkansas Supreme Court refused to consider his arguments, finding that Williams did not specifically object until after Knight finished testifying.

In his Rule 37 petition, Williams argued his trial counsel was ineffective for failing to properly object to Knight's testimony.  The circuit court found that Williams's counsel made a strategic decision not to object to Knight's testimony and that her testimony did not go so far as to tell the jury what the sentence should be.  The court further found that there was no reasonable probability that the jury's verdict would have been different had a timely objection been made. The Arkansas Supreme Court affirmed.

In the petition before this Court, Williams argues the admission of Knight's testimony violated the Eighth Amendment and was an unreasonable application of *Payne v. Tennessee*, 501 U.S. 808 (1991); violated state law, the Fourteenth Amendment, and is an unreasonable application of *Hicks v. Oklahoma,* 447 U.S. 343 (1980); and that if this Court agrees with the state court that he procedurally defaulted his objection to Knight's testimony at trial, his counsel rendered ineffective assistance of counsel.

a.      Eighth Amendment

Williams filed a pre-trial motion to preclude the introduction of victim impact evidence pertaining to the victim's family members' characterizations and opinions about the crime, the defendants, and the appropriate sentence.  In support he cited the Eighth and Fourteenth Amendments and quoted *Payne v. Tennessee.*   Trial Record, Vol. 1 at 83-85.  The state court denied the motion. Trial Record, Vol. 2 at 450.  At trial, Williams did not express any particular theory when he objected to Knight's testimony; he simply argued it was not proper for Knight to tell the jury what to do.  Trial Record, Vol. 8 at 2076-77.  On direct appeal, Williams relied on state law when arguing specifically about Knight's testimony that purportedly called for the death penalty.  Post-trial Record, Vol. 2 at 204-05.  Respondent contends that because Williams did not rely on the Eighth Amendment for the legal basis of his claim, he is barred from arguing that claim here.  The Court finds Williams's Eighth Amendment claim was not fairly presented in state court.  *See Picard v. Connor,* 404 U.S. 270 276-78 (1971)(legal basis for a claim urged in state court must be "the substantial equivalent" of that relied on in the federal petition, and legal claims are not substantially equivalent if they arise under different constitutional provisions).

Even if Williams's Eighth Amendment claim was adjudicated in state court, the claim is barred because the state court determined that counsel's objection to Knight's testimony was not sufficiently contemporaneous to preserve the issue for appellate review.  *Williams I*, 67 S.W.3d at 563.  Williams argues this was not a reasonable interpretation of the facts.  The state court's application of state procedural law to the facts constitutes a mixed question of law and fact. Moreover, federal courts "do not sit to correct a state court's application of its procedural rules," and therefore, "should not consider whether the state court *properly* applied its default rule to [a] claim."  *Clemons v. Luebbers,* 381 F.3d 744, 750 (8th Cir. 2004)(emphasis in original).   Even if

14

it were purely a determination of fact, the finding would be presumed correct under 28 U.S.C. §
2254(e)(1), as it is supported by the record which shows that Williams's counsel did not object at
the earliest opportunity, as is required by state law.  *See Smith v. State,* 953 S.W.2d 870 (Ark.
1997).  Thus, whether the state court's application of its default rule was reasonable or correct as
a matter of state law cannot provide the basis for excusing Williams's default.

Williams asserts that Arkansas's contemporaneous objection rule is an "inadequate
ground" and thus can be overlooked as a bar to relief.  A state's contemporaneous objection rule
is adequate to bar federal review if it is firmly established and regularly followed at the time it is
applied.  *See Wainwright v. Sykes,* 433 U.S. 72, 86, 90 (1977) (a state's contemporaneous
objection rule is an independent and adequate state ground).  As part of the adequacy inquiry,
federal courts will not decide precisely when an objection must be made in state court in order
for it to be considered timely.  *See Ford v. Georgia,* 498 U.S. 411, 423-24 (1991)(citing *Batson
v. Kentucky,* 476 U.S. 79, 99-100 (1986)).

It has long been the law in Arkansas that, in order to preserve an objection to testimony or
evidence for appeal, an objection must be made at the first opportunity, and the first opportunity
has long been construed to mean as soon as the objectionable content is called for or is offered.
*See e.g. Asher v. State,* 795 S.W.2d 350, 352 (Ark. 1990); *Foreman v. State.* 945 S.W.2d 926,
929 (Ark. 1997); *Smith v. State, supra.*  Williams did not object at the first opportunity.  It was
not until the State had completely finished questioning Knight that any objection was made to her
comment that the jury possessed the power to act.  The procedural rule having been firmly
established and regularly followed before it was applied to Williams, the Court finds it is
adequate to bar review, and the record supports its application.

15

Even if Williams could defeat the bar in any manner, he is not entitled to relief.  First, as the state court found, Knight's testimony did not call for a sentence of death.  *Williams II*, 251 S.W.3d at 294.  This finding is supported by the record and, therefore, is subject to the presumption of correctness under 28 U.S.C. § 2254(e)(1).  Knight's testimony about the helplessness her family felt as a result of Boren's murder is the type of victim impact information that was deemed relevant to a jury's capital-sentencing decision in *Payne*.

In *Payne v. Tennessee,* 501 U.S. 808 (1991), the Supreme Court said: "We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant."  501 U.S. at 835.  The Supreme Court specifically noted that *Payne* did not affect the holding in *Booth v. Maryland,* 482 U.S. 496 (1987),that the "victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence" are irrelevant. *Payne*, 501 U.S. at 830 n.2.

The Court finds the Arkansas Supreme Court's reasoning completely consistent with *Payne* and *Booth*.  Williams cannot show that Knight directed the jury to impose a sentence of life without the possibility of parole or death by lethal injection.  The record shows that Knight explained her sadness and helplessness with her family's situation.  She did not express an opinion concerning the punishment that the jury should impose.  Williams has not convinced the Court that Knight's comment that, "you can do something," played a substantial role or any role at all in the jury's assessment of imposing the death penalty.  *See Welch v. Sirmons*, 451 F.3d 675, 704 (10th Cir. 2006)(improper aspects of victim impact evidence did not play substantial role in jury's assessment of death penalty).  Williams was found guilty of  capital murder and

then sentenced to death after the jury found beyond a reasonable doubt that four separate

aggravating circumstances existed: (1) A jury had convicted Williams of two prior felonies and

sentenced him to life when he escaped and killed Boren; (2) Williams had previously committed

a violent felony; (3) Williams created a great risk or caused the death of more than one person in

the same criminal episode and (4) Williams killed Boren to avoid arrest.

Even if the admission of Knight's testimony constituted error, it was harmless. That is, it

did not have a "substantial and injurious effect or influence in determining the jury's verdict" at

sentencing. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). A "substantial and injurious

effect" occurs when the court finds itself in "grave doubt" about the effect of the error on the

jury's verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). "Grave doubt" exists where the

issue is "so evenly balanced that [the court] feels [itself] in virtual equipoise as to the

harmlessness of the error." *Id.*

A review of the entire record and victim impact testimony demonstrates that Knight's

statement was within the bounds of *Payne*. Williams has not shown that the statement had a

substantial and injurious effect or influence in determining the jury's sentence. The Court finds

that the Arkansas Supreme Court's decision was not contrary to or an unreasonable application

of federal law.

b.      Fourteenth Amendment

In *Greene v. State*, 37 S.W.3d 579 (Ark. 2001), the Arkansas Supreme Court held that a

defendant is not entitled to introduce evidence that a surviving victim has forgiven the defendant

and prefers a sentence of life imprisonment for him because such evidence is irrelevant, as an

evidentiary matter, under *Payne* and Ark. Code Ann. § 5-4-602. In *Hicks v. Oklahoma,* the

Supreme Court overturned the defendant's sentence on due process grounds because the jury had

not determined the sentence as required by state law.  Williams's argument that allowing

Knight's "pro-death" testimony was an unreasonable application of *Hicks* and violated his rights

to due process and equal protection is unpersuasive.

c.      Ineffective Assistance of Counsel

Williams similarly fails on his claim that counsel rendered ineffective assistance when he

failed to lodge a timely objection to Knight's testimony.  Where an underlying challenge to

victim impact evidence is without merit, it is clear that a related claim of ineffective assistance of

counsel for not objecting to the evidence cannot succeed.  *See Gray v. Bowersox,* 281 F.3d 749,

756 n.3 (8th Cir. 2002).

Moreover, counsel's decision about when to object to Knight's testimony was clearly a

strategic one, as the state court determined.  Counsel's testimony implied that the time of his

objection was informed by a number of factors - his desire not to cut off the witness, his desire

not to upset the jury, and his desire to show sensitivity.  Post-Conviction Record, Vol. 2 at 143,

159-60.  The mere fact that counsel did not make a timely objection does not overcome the

presumption that counsel's conduct nevertheless fell within the wide range of reasonable

professional assistance.  *See Michel v. State of Louisiana,* 350 U.S. 91, 101 (1955)(failure to

timely file  motion to quash does not overcome presumption of effectiveness).  Thus, the state

court's decision fits within the applicable *Strickland* standard, which requires a defendant to

show counsel's performance was not only deficient but also that it prejudiced his defense.

Williams fails to show that the state applied *Strickland*'s deficient-performance prong in an

objectively unreasonable manner.  Thus, his second ground for relief is without merit.

18

**3.      Ineffective Assistance of Counsel Claims**

For his third, fourth, and fifth grounds for relief, Williams claims he received ineffective

assistance of counsel when his attorney: 1) failed to object to juror LaRhonda Washington; 2)

failed to properly object to the jury's failure to consider mitigating evidence; and 3) failed to

introduce the supporting documentation of mitigation evidence.  Respondent counters that

Williams has not met the deferential standard under § 2254 and is not entitled to relief.

To prevail on an ineffective assistance of counsel claim, Williams must demonstrate that

his counsel's performance was deficient, that is, that counsel failed to exercise the customary

skills and diligence of a reasonable attorney in similar situations, and that the deficiency

prejudiced the defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To establish

prejudice, Williams must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.

"Judicial scrutiny of counsel's performance must be highly deferential . . . [and the court] must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  *Id.* at 689.

a.       Juror Washington

During voir dire, Williams's attorneys questioned LaRhonda Washington extensively

about her understanding of the criminal justice system and her position on the death penalty.

Trial Record, Vol. 6 at 1491-1523. Washington said that she did not oppose the death penalty

and believed it was an appropriate punishment in certain circumstances.  She also stated she

understood the bifurcated trial and would consider all the evidence before making a decision.

Williams agreed to Washington's service but stated that he would have used a strike to remove her had he any left. *Id*. at 1523.

During Williams's Rule 37 hearing, Williams's post-conviction counsel  questioned Williams's trial counsel on Washington and her alleged bias.  Williams believed that his counsel was ineffective because he misunderstood the law and did not make a proper objection to Washington based on cause.[3]  However, Williams's attorney explained that, to preserve the point he would have needed to challenge her for cause, but "[Washington's] answers equivocated back and forth . . . .  I didn't think we'd be successful in sustaining a challenge for cause."  Post Trial Record, Vol. 2 at 145.

In reviewing and denying Williams's ineffective assistance of counsel claim, the Arkansas Supreme explained:

> While there is no dispute over the fact that the trial counsel failed to challenge Ms. Washington for cause, we conclude that their failure to do so did not render their representation ineffective. At the Rule 37 hearing, one of Williams's trial counsel testified that he did not believe he could prevail on a challenge for cause for the juror. That is because, he said, while Ms. Washington seemed to favor the death penalty, she also replied affirmatively that she could consider the full range of punishment, that she could consider mitigating circumstances and weigh them against aggravating circumstances, and that she would have to listen to the evidence to make a decision. Based on trial counsel's testimony and Ms. Washington's responses, the circuit court found no error in failing to challenge Juror Washington for cause. The circuit court further found that there was no prejudice to Williams in having Ms. Washington serve as a juror because there was not a reasonable probability that the results in either the guilt or the penalty phase of the trial would have been different had Ms. Washington not served as a juror. We agree.

*Williams II,* 251 S.W.3d at 113.

---

[3]In *Morgan v. Illinois,* 504 U.S. 719 (1992), the Supreme Court held that a capital defendant may challenge for cause any prospective juror who has already determined to impose the death penalty if the defendant was convicted.

Williams contends that the Arkansas Supreme Court's findings that Washington was not biased, that her presence was not prejudicial, and that counsel was not ineffective are contrary to or an unreasonable application of federal law and an unreasonable determination of the facts. The Court finds these arguments are without merit.

The question of whether a juror is biased is an issue of fact, and the state court findings regarding juror bias are subject to the presumption of correctness. *See Greene v. Georgia,* 519 U.S. 145, 146 (1996). The controlling Supreme Court precedent for Williams's Sixth Amendment claim of ineffective assistance of counsel is *Strickland.* The state court recognized and applied this authority in an objectively reasonable manner.

b.      Jury's Consideration of Mitigating Evidence

The focal point of Williams's fourth ground is Verdict Form 2, which concerns the jury's findings about mitigating evidence and circumstances. Pursuant to the Arkansas model jury instructions, Form 2 submitted to the jury in Williams's case contains four paragraphs: A, B, C, and D. *See* Trial Record, Vol. 2 at 500 (C)-(G). Paragraph A begins with the statement: "We the jury find the following mitigating circumstance(s) probably existed." Below this statement are checkmark spaces beside the sixteen mitigating circumstances proffered by the defense, and a blank space where the jury could determine its own circumstance. *See id.* at 500 (C)-(D). Paragraph B begins with the statement: "One or more members of the jury believed that the following mitigating circumstance(s) probably existed, but the jury did not unanimously agree that such mitigating circumstance(s) probably existed." Below this statement are the same proffered specific mitigating circumstances as set forth in Paragraph A and a blank space for other mitigating circumstances.

21

Paragraph C begins with the statement: "There was some evidence presented to support the following circumstance(s).  However, having considered this evidence, the jury unanimously agreed that it was insufficient to establish that the mitigating circumstance(s) probably existed." Paragraph C then lists the mitigating circumstances set forth in Paragraphs A and B and provides checkmark spaces beside each.  The jury checked the third circumstance, "Kenneth D. Williams experienced family dysfunction which extended from generation to generation."  Paragraph D provides a checkmark space next to the following statement: "No evidence of a mitigating circumstance was presented by either party during any portion of the trial. [Check only if no evidence of a mitigating circumstance was presented.]"

Williams argues the jury did not properly complete the verdict forms because they failed to check the boxes in front of certain other mitigating factors, which would have indicated that they decided there was insufficient evidence.  The fact that they not do so indicates, according to Williams, that the jury failed to consider those mitigating factors which is a violation of his Eighth Amendment right to an individualized sentencing determination.  He argues the Arkansas Supreme Court unreasonably applied United States Supreme Court decisions in determining there was no Eighth Amendment violation and in holding that his counsel was not ineffective in failing to object to the incomplete forms.

The Arkansas Supreme Court addressed Williams's jury verdict form error argument twice.  First in his direct appeal, the court reviewed and denied Williams's claim explaining that the jury was not bound to accept unrefuted expert testimony that Williams suffered from mental and familial dysfunction. *Williams I*, 67 S.W.2d at 562.  Then in his appeal from post-conviction relief, the Arkansas Supreme Court again denied the claim, stating:

With regard to the other proposed mitigators in Part C, we have made the role of the jury clear: 'This court has previously held that '[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.' This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true.' Given this broad authority in the jury for determining whether mitigating circumstances exist, we do not believe that the jury erred in this case by failing to conclude that any other proposed mitigator constituted a mitigating circumstance. The mere fact that evidence is presented by trial counsel that an issue constitutes a mitigator does not mean that the jury is required to conclude that it is.

*Williams II*, 251 S.W.3d at 298 (internal citations omitted).

Williams concedes that the jury was entitled to reject the proffered mitigation. He argues, however, that the Arkansas Supreme Court misinterpreted his claim as one involving the jury's consideration of mitigation evidence when his challenge was to the jury's failure to properly complete the verdict forms.

Williams relies on *Penry v. Lynaugh*, 492 U.S. 302 (1989), and *Mills v. Maryland*, 486 U.S. 367 (1988) for his Eighth Amendment argument. *Penry* and *Mills* both address the sentencer being prohibited from considering mitigation evidence; i.e., where a statute or jury instruction has prohibited consideration of the evidence. The Arkansas Supreme Court's opinion is not contrary to or an unreasonable application of *Penry* or *Mills*. There are no instructions or forms that Williams argues were worded so as to affirmatively lead jurors to believe they could not consider or give effect to his evidence. The fact that they did not acknowledge on Part C of Form 2 that he had presented "some evidence . . . to support" the listed mitigating circumstances does not mean the jury categorically refused to consider his evidence. Neither *Penry* nor *Mills* nor any other precedent clearly establishes that an incomplete verdict form concerning mitigating evidence, without more, constitutes a *per se* violation of the Eighth Amendment.

The Court finds the Arkansas Supreme Court's reasoning completely consistent with the *Strickland* standard for evaluating ineffective assistance of counsel claims.  There was no Eighth Amendment violation, and even if there had been, it would have been deemed harmless.  The evidence supporting a capital sentence was overwhelming.  The jury's actions in completing Part C of Form 2 are harmless error because the jury found beyond a reasonable doubt that four aggravating circumstances existed and those circumstances outweighed any mitigating circumstances beyond a reasonable doubt.  See *Howard v. State*, 238 S.W.3d 24, 48 (Ark. 2006).

Williams has failed to convince this Court that the Arkansas Supreme Court's opinions are contrary to or an unreasonable application of federal law.  The Court does not find merit in his *Strickland* claim because Williams cannot meet either prong, deficient representation or prejudice.  Williams's fourth claim is dismissed.

c.     Documentation of Mitigation Evidence

Williams next claims that his attorney was ineffective by failing to introduce documentation of the mitigation evidence he presented at trial. Williams's attorney presented a thorough and lengthy presentation of mitigation evidence regarding Williams's social, physical, educational, and family history.   He presented much of this testimony through Dr. Mark Cunningham, a psychologist.  Williams's attorney did not attempt to introduce any of the investigative documents that Cunningham had used to form his opinion.  The Arkansas Supreme Court reviewed the ineffective assistance of counsel claim and denied relief:

> Dr. Cunningham testified at trial for an hour and a half, including his use of a Power Point presentation, about each of these circumstances that Williams submitted to the jury as proposed mitigation. We do not see how the underlying documents relied on by Dr. Cunningham would have established mitigation in the jurors' minds when his testimony did not. Trial counsel maintain that it was their strategy to rely on Dr. Cunningham's testimony alone. We agree with the circuit

> court that this was not attorney error. Moreover, *Wiggins v. Smith* . . . is not
> apposite to the facts of the instant case. In *Wiggins*, trial counsel failed to
> investigate appropriately the defendant's troubled childhood as a mitigator. Here,
> trial counsel presented a substantial case through the testimony of Dr.
> Cunningham.

*Williams II*, 251 S.W.3d at 299.

During Williams's post-conviction hearing, his trial attorney testified that he had obtained every record he could get his hands on, from hospital to juvenile records.   The defense presented that evidence through Cunningham's testimony and a prepared video/slide presentation.   Dr. Cunningham testified at length about numerous factors that he believed placed Williams at a disadvantage growing up, including inadequate parenting, substance abuse by his parents, community violence, economic distress, unsanitary living conditions, and various institutionalizations.   Counsel explained he did not feel it was necessary to Williams's case to burden the jury with going through all the paper records.   Post-Trial Record, Vol. 2 at 148-151.

The record demonstrates counsel strategically decided not to introduce the mitigation documents to the jury.   Clearly, Williams's attorneys investigated and discovered the evidence that  Cunningham used.   Williams cites to *Wiggins v. Smith*, 539 U.S. 510 (2003).   However, as the Arkansas Supreme Court noted, *Wiggins* is the opposite of Williams case.   In *Wiggins*, the defendant was prejudiced because of an inadequate investigation.   *Wiggins* does not hold that an adequate and constitutionally sound investigation requires the introduction of documents versus live testimony.

Williams fails to provide any support for his argument.   He cites no statutory or case law that requires the mitigation witness to introduce supporting documentation.   The Court  is unable to find clearly established federal precedent or any precedent that would require Williams's

attorney to introduce the documents upon which Cunningham based his opinion.  The Court

finds the state court decision is consistent with clearly established Supreme Court precedent and,

therefore, denies relief on Williams's fifth ground.

**4.      Restraints at Trial**

Williams's sixth ground for relief is that his due process rights were violated when the

trial court required him to stand trial while shackled in prison attire with numerous uniformed

officers around him. Williams argues the Arkansas Supreme Court applied the wrong legal

standard in affirming the trial court's decision.

In considering Williams's request to be tried in civilian clothing and without physical

restraints, the trial court heard testimony that Williams taunted the victims' families throughout

his previous trial for capital murder to the point where the victims' families tried to attack him.

Trial Record, Vol. 3 at 670.  Following the verdict in that case, he fought with security personnel

as they took him to a holding cell, and later tried to break out of a moving car while being

transported to the ADC.   *Id.*   The trial court found that restraints were justified because of the

threat Williams posed and that no prejudice would result from being tried in prison clothes

because proof that he was a prisoner was part of the State's case. *Id.* at 686-90.  On direct

appeal, the Arkansas Supreme Court agreed that prison clothing and restraints were justified.

In his post-conviction proceedings, Williams argued the point again, this time insisting,

as he does here, that the state courts applied the wrong legal standard.  Relying on *Deck v.*

*Missouri,* 544 U.S. 622 (2005), a case decided after his trial but while his Rule 37 motion was

pending, Williams argues that being tried in restraints is considered inherently prejudicial and

that the state, therefore, was obligated to negate the inherent prejudice beyond a reasonable

doubt.   The Arkansas Supreme Court rejected this argument: "The proper standard was applied by this court because there was adequate justification for Williams's shackles. The standard announced in *Deck,* which places the burden of proving a lack of prejudice to the defendant on the State, only pertains where there is no adequate justification for a defendant wearing shackles during his trial."  *Williams II*,  251 S.W.3d 290, 300 (Ark. 2007).

According to *Deck*: "[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation."  544 U.S. at 635.  In that limited instance, which is not applicable here, the state must prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Id.* (internal quotation omitted).

The Court finds the state court decision is consistent with clearly established Supreme Court precedent, and therefore, denies relief under 28 U.S.C. § 2254(d).

## 5.    Funds for Investigator

Lastly, Williams claims the Rule 37 court erred in refusing to authorize funds for him to retain an investigator to probe issues of juror bias and misconduct.  He argues the state court's denial of his request was contrary to, or an unreasonable application of, *Williams v. Taylor*, 529 U.S. 420 (2000).  He asks this Court to grant him funds to hire an investigator and set an evidentiary hearing on the results obtained from such investigation.[4]

In denying Williams relief, the Arkansas Supreme Court stated:

[W]e conclude that Williams has failed to prove the need for an investigator. Both parties quote language from *Williams v. Taylor*, supra, that states that the State

---

[4]Williams also asserts that the state's failure to provide funds for an investigator may jeopardize its efforts to qualify as an "opt-in" state under the AEDPA.

does not have an obligation to pay for an investigation when the claims have not been developed in any respect.  *See Taylor*, 529 U.S. at 443 ("We do not suggest the State has an obligation to pay for investigation of as yet undeveloped claims; but if the prisoner has made a reasonable effort to discover the claims to commence or continue state proceedings, § 2254(e)(2) will not bar him from developing them in federal court."). Nothing required Williams's counsel to rely exclusively on an investigator to investigate whether one of the thirteen jurors had failed to disclose information accurately during voir dire or in the completion of their respective jury questionnaires. The obvious question is why Williams's counsel for his Rule 37 petition did not investigate the matter initially himself for purposes of his Rule 37 petition to determine whether any juror seated for the trial was dishonest in his or her voir dire responses.

*Williams II*, 251 S.W.3d at 302.

Williams concedes that he does not have any evidence that a specific juror misrepresented the facts during voir dire so as to cover up any bias and Williams is unaware of any bias on the part of any juror.  He argues, however, that he is entitled to funds to explore whether any such evidence of bias might exist.  As the Arkansas Supreme Court noted, *Williams v. Taylor* does not establish the existence of a constitutional entitlement to post-conviction investigative funds for the purposes of discovering whether a claim of constitutional error exists.  Williams sets forth no precedent, and the Court finds none, for the proposition that a state court must provide investigative services in state post-conviction proceedings, much less to provide them merely upon a request that is unsupported by any allegation reflecting the existence of juror misconduct or a hint thereof.

When there is no clearly established Supreme Court precedent that applies to a habeas petitioner's claim, the state court's resolution of that claim cannot be deemed contrary to, or an unreasonable application of, Supreme Court precedent.  *See Evenstad v. Carlson,* 470 F.3d 777, 784 (8th Cir. 2006)("As there is no clearly established federal law on this issue, this court cannot

28

conclude either the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)").  Williams's seventh claim is dismissed.

**Conclusion**

The Court has reviewed the entire transcript of Williams's proceedings in the courts of Arkansas and has considered all of the bases for which he argues he is entitled to a writ of habeas corpus.  Neither Williams's capital murder conviction nor his death sentence violates the United States Constitution.  The decisions of the state court are not clearly contrary to nor an unreasonable application of federal law.  Williams's petition for writ of habeas corpus is denied in its entirety.  Judgment will be entered accordingly.

SO ORDERED this 31st day of October, 2008.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE